## GOLDSTEIN v. SCRANTON RY. CO.

(Circuit Court of Appeals, Third Circuit.   December 9, 1913.)

### No. 1,774.

CARRIERS (§ 320*) — ACTION FOR INJURY TO PASSENGER — STREET RAILROAD — QUESTIONS FOR JURY.

Plaintiff was a passenger on a street car of defendant, sitting next a window, and when a meeting car passed on the adjoining track his arm was struck and broken. There were three horizontal rods running across the front of the window. Several passengers in the car testified that plaintiff was resting his arm on the window sill, with his head on his hand, and that when the meeting car passed they heard a scraping sound along the side of their car. *Held*, that such evidence tended to show negligence on the part of defendant, and might raise a presumption of such negligence, which would shift the burden of proof, and should have gone to the jury, and that it was error to grant a compulsory nonsuit.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

In Error to the District Court of the United States for the Middle District of Pennsylvania; Chas. B. Witmer, Judge.

Action at law by Wolf Goldstein against the Scranton Railway Company. Judgment for defendant, and plaintiff brings error. Reversed.

R. L. & L. M. Levy, of Scranton, Pa., for plaintiff in error.

Walter L. Hill and Everett Warren, both of Scranton, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. This case comes before us on a writ of error to the action of the court below, in refusing, upon the motion of the plaintiff, to strike off a judgment of compulsory non-suit. The material facts disclosed by the record are as follows:

The defendant company was engaged in the operation of a system of street railways in the city of Scranton and state of Pennsylvania, and on or about the 18th day of July, 1912, operated as part of its system certain double tracks situate upon Madison avenue in the said city. On that day, the plaintiff, Wolf Goldstein, was a passenger on one of defendant's cars, about 10 o'clock in the evening. The car was what was known as a closed car. The seats on one side—the left side, facing the front of the car and next to the track upon which cars were moved in the opposite direction—were arranged like those in an ordinary railroad coach, designed to be occupied by two persons each, and stood at right angles to the side of the car. On the opposite side was a long seat running longitudinally. The plaintiff boarded the car in the central part of Scranton, to ride to his home in the suburbs. He took a seat on the left-hand side, the third from the front. There was no one else in the seat and, the weather being warm, he sat next to the window, which was open, with this left arm or

elbow resting on the sill. Along the outer edge of the wall of the car were three small horizontal iron guard rods that ran the entire length of the car, several inches apart, past all the windows, the lowest being a few inches above the sill. The car proceeded out Madison avenue, on which are two tracks of the defendant company, and at a certain point on said avenue was passed by another car of the defendant, of the same type, on the adjacent or inbound track and traveling in the opposite direction. When the fronts of the cars were opposite each other, there was a sound which some of the plaintiff's fellow passengers, who were called as witnesses, testified was like a scraping sound against the side of the car in which they were riding, and the plaintiff, with a cry of pain, was seen to fall over on his seat. His arm had been broken. Plaintiff was a traveling salesman and accustomed to ride on street cars.

One of the passengers, William Page, testifies that he was in the car with the plaintiff at the time of the accident, and was sitting on the left side thereof (the same side on which plaintiff was sitting) and close behind him; that he knew the plaintiff; that there were not many people in the car and that, "as we were going up the hill on Madison avenue, there was a Moosic Lake car coming down, and I heard a scraping the minute the two cars met together; they scraped all the way down along the whole length of the car, and I heard Mr. Goldstein holler after the car passed"; that he (Page) made an exclamation when he heard the scraping; that "when I heard Mr. Goldstein holler I went up and recognized him." In answer to the question, "Did you look out of the window to see where the Moosic Lake car was, with reference to your car?" he answered:

"Why it went by, and I went like that when it went by (indicating). Q. Why did you go like that? A. Because the car was so close to me. Q. So close to you? A. Yes, it certainly was."

He also testifies that he helped take plaintiff to the hospital, where it was found that his arm was broken in two places, and that there was a bruise on the elbow.

Another passenger, Davis R. Davis, after testifying that he occupied a seat directly behind the plaintiff, and describing the latter's position in the car, with his left elbow resting on the window sill and his head on his hand, replied to the question, "Tell us what you saw take place," as follows:

"I was sitting just the same as I am now, about, and I could hear some noise coming in the opposite direction, as if there was something rattling on the car, and I moved in, you know, and with that, the car passed and struck me."

This testimony, on motion of defendant's counsel, was struck out by the learned judge of the court below. No reason is given therefor, but, as we think it was properly part of the res gestæ, we here recite it as evidence entitled to consideration on the motion for a non-suit. He says he heard the plaintiff cry out and saw him double up in pain, just after the car passed.

Another witness, Frances Burke, who, with two other young women, was riding in the car on the night of the accident, testified that she

was sitting right across the car from the plaintiff, facing towards him. She says the plaintiff had his arm on the window sill and that his head was leaning on his hand; that she saw something from the other car flash along and strike plaintiff; that she could not tell what it was, but that as it went along it flashed, whatever it was; that she saw the plaintiff fall over on his side and cry out; that the Moosic Lake car seemed quite close, but she could not see how close; that she heard a noise as the car passed, but she could not tell what it was.

One of her companions, Loretta Campbell, who was sitting also across the aisle from the plaintiff, testified that she remembered a car coming towards the city, between Mulberry and Pine, on Madison, and the "conductor of our car was on the front platform, and whatever struck the car, when it did strike, he came rushing in and wanted to know who was struck." She testified that she "saw the car pass and it was going at an awful rate of speed and something struck the car" in which she was; that she heard "an awful scraping sound" as the two cars were passing; heard the plaintiff cry out as the car passed.

Regina Campbell, the other of the three young women, testified to about the same effect; that the plaintiff was sitting with his arm on the sill and his head on his hand; that she noticed the other car passing and heard the scraping sound and then the cry of the plaintiff.

Plaintiff himself testified that he saw the Moosic Lake car approaching him, before it struck, and that he was under the impression that the end or corner of that car struck the car in which he was riding, and inflicted the injury complained of upon his arm. The testimony tended to show that the plaintiff was struck just as the motorman on the other car passed the window at which he was sitting.

Under a stipulation of counsel, the deposition of one Joseph E. O'Malley was taken by the defendant and read in evidence. He was a passenger on the Moosic Lake car, the car going in the opposite direction to that in which the plaintiff was riding, and which it is alleged collided therewith, or in some way caused the injury complained of. He said that while the car was on Madison avenue, about Vine street or near Vine street, just as another car was passing, he heard somebody shout "Oh," and a dull thud at the same time, and that the noise came from the outside of the car in which he was riding; that he was sitting in the back of the car and the noise appeared to come from the front. He also testified that on the arrival of the car at its destination, he, with some other persons, went to look at the car in which he, the witness, was riding, to see what had happened, but that he observed nothing on the side of the car to indicate any collision; that no scratches or abrasions appeared thereon. But this was not the car in which plaintiff was injured.

If a collision of the two cars, as alleged by plaintiff, is not so supported by the evidence as to constitute, as a matter of law, a prima facie case for the plaintiff, it at least tends to show negligence on the part of the defendant; that is, it tends to show that there was either an actual collision between the front end of the Moosic Lake car and the near side of the other car, or that something was negligently al-

lowed to protrude from the front end of the Moosic Lake car and come into contact with the other car and the plaintiff's arm, which is the same thing.

It seems to us that the evidence was such that reasonable men might or might not draw that conclusion therefrom. If, in the opinion of the jury, the weight of the testimony inclined to the side of establishing such a collision, then it would be a "happening in the course of the conduct of the business of the defendant out of the ordinary routine of that business, when properly conducted, upon which the presumption of negligence would rest," throwing upon the defendant the burden of making some explanation of the same that would rebut that presumption. Irvine v. D., L. & W. R. R. Co., 184 Fed. 664, 669, 106 C. C. A. 600.

From the evidence thus summarized, we think the learned judge of the court below was in error in granting a compulsory non-suit. The judgment of the court below is therefore reversed, with an order for a venire de novo.